Arturo DE LA CRUZ, Appellant,

v.

Columbus P. BROWN a/k/a
C.P. Brown, Appellee.

No. 08–02–00208–CV.

Court of Appeals of Texas,
El Paso.

May 15, 2003.

Rehearing Overruled June 18, 2003.

Anthony C. Aguilar, El Paso, for Appellant.

Jeffrey B. Thompson, Alto, NM, for Appellee.

Before Panel No. 5 McCLURE, CHEW, JJ., and PRESLAR, C.J. (Ret.)(sitting by assignment).

## OPINION

ANN CRAWFORD McCLURE, Justice.

In this case of first impression, we consider whether statutory protections afforded to the residents of *colonias* may give rise to a private cause of action for monetary damages. Because we conclude that the Legislature intended to create a private cause of action, we reverse and remand.

## FACTUAL SUMMARY

On December 3, 1984, Arturo de la Cruz purchased from Columbus P. Brown by executory contract a parcel of land described as Lot 3, Block 5, Roseville Subdivision, El Paso County, Texas, also known as 320 Bauman Road, El Paso County, Texas. De La Cruz made the final payment on June 9, 1997. In January 2001, he filed suit for damages arising from Brown's failure to transfer recorded legal title to the property in question. He argued that Section 5.102 of the Texas Property Code provided for the imposition of fines on the seller of real property if the seller failed to transfer recorded legal title within thirty days of receipt of the purchaser's final payment. TEX.PROP.CODE ANN. § 5.079 (Vernon's Supp.2003).[1] Brown recorded the deed to the property on March 30, 2001, nearly four years after final payment was tendered.

De La Cruz filed a motion for summary judgment claiming that he had established as a matter of law his entitlement to the sum of $648,5000 in penalties for a violation of Section 5.102. By amended motion, he adjusted the penalty to $664,500. In his first amended answer, Brown claimed that Section 5.102 did not provide a private cause of action and that the penalties sought to be imposed would amount to an excessive fine. He alternatively alleged the affirmative defenses of waiver, estoppel and laches, and contended that De La Cruz had failed to mitigate his damages, if any. Brown then filed a response to De La Cruz's amended motion for summary judgment, in which he asserted essentially the same arguments as those presented in his amended answer. Brown also filed a motion for summary judgment arguing that Section 5.102 did not grant De La Cruz a private cause of action. Pertinent to our disposition, he did not raise any of his affirmative defenses in that motion for summary judgment. The trial court granted Brown's motion, denied De La Cruz's motion, and rendered a take-nothing judgment in favor of Brown.

This appeal follows. De La Cruz brings seven issues challenging the granting of Brown's motion for summary judgment and the denial of his own. The main issue before us—the interpretation and construction of Section 5.102 of the Texas

---

1. Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3, *amended by* Act of June 13, 2001, 77th Leg., R.S., ch. 693, § 1, eff. Sept. 1, 2001.

Property Code—is one of first impression.[2]

## STANDARD OF REVIEW

When examining cross-motions for summary judgment, the reviewing court should analyze the summary judgment evidence produced by each side and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). We should then render such judgment as the trial court should have rendered. *Id.* Both motions for summary judgment turn on the statutory construction of Texas Property Code Section 5.102; thus, the case is ideally suited for summary judgment.

Statutory construction is a question of law, which we review *de novo*. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). Our purpose in construing a statute is to determine legislative intent. *Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001). As a starting point, we construe the statute as written and, if possible, ascertain intent from the statutory language. *Id. citing Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985). Legislative intent should be determined by reading the language used and construing the statute in its entirety. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex.1998); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981). Further, we should read every word, phrase, and expression as if it were deliberately chosen, and presume that words excluded from the statute were excluded purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex.App.-Austin 2002, pet. denied). We may also consider other factors, including the object the statute seeks to obtain, circumstances under which the statute was enacted, legislative history, and the consequences of a particular construction. *Id.; see also* TEX.GOV'T CODE ANN. § 311.023 (Vernon 1998).

## THE STATUTE AT ISSUE

Section 5.102 provided:

(a) The seller shall transfer recorded, legal title of the property covered by the executory contract to the purchaser not later than the 30th day after the date the seller receives the purchaser's final payment due under the contract.

(b) A seller who violates Subsection (a) is subject to a penalty of:

(1) $250 a day for each day the seller fails to transfer the title to the purchaser during the period that begins the 31st day and ends the 90th day after the date the seller receives the purchaser's final payment due under the contract; and

(2) $500 a day for each day the seller fails to transfer title to the purchaser after the 90th day after the date the seller receives the purchaser's final payment due under the contract.

(c) In this section, 'seller' includes a successor, assignee, personal representative, executor; [sic] or administrator of the seller.

Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3 (amended 2001)(current version at TEX.PROP.CODE ANN. § 5.079 (Vernon Supp. 2003)).

## LEGISLATIVE HISTORY

---

2. Only one other Texas case mentions Section 5.102. In *Salinas v. Beaudrie*, 960 S.W.2d 314 (Tex.App.-Corpus Christi 1997, no pet.), the court held that the statute applied to a contract for deed that was executed before the effective date of the statute, since final payment was due after the effective date. *Id.* at 319.

## OF THE STATUTE[3]

Section 5.102 of the Texas Property Code was introduced during the 74th Legislative Session as part of S.B. 336. Senate Committees on International Relations, Trade & Technology, Bill Analyses, Tex. S.B. 336, 74th Leg., R.S. (1995). S.B. 336 sought to establish notice and cure provisions required for a defaulting purchaser under a contract for deed and to establish requirements for and loans associated with a contract for deed transaction in certain counties. *Id.* S.B. 336 was signed in the Senate and House on May 27, 1995, and by the Governor on June 17, 1995. It became effective on September 1, 1995.

The bill was targeted to address subdivisions known as *colonias,* described as "substandard, generally impoverished, rural subdivisions that typically lack one or more of the basic amenities of water, wastewater service, paved streets, drainage or electric service." Senate Committees on International Relations, Trade & Technology, Bill Analyses, Tex. S.B. 336, 74th Leg., R.S. (1995). While *colonias* exist in the greatest concentration along the Texas–Mexico border, particularly in the lower Rio Grande Valley and El Paso County, there are similarly substandard subdivisions in virtually every area of Texas. *Id.*

Residents of *colonias* almost always acquire lots by means of an executory contract, generally known as a "contract for deed" or "contract for sale." *Id.* This type of conveyance is unlike a typical deed of trust transaction in several notable respects. First, the property being conveyed generally is land only, with no house, structure or improvements includ-

ed. Second, under a contract for deed, legal title does not transfer until all payments are made, and the purchaser may not accrue any equity in a tract even though substantial payments have been tendered. Third, contracts for deed are not required to be recorded; and fourth, virtually none of the state and federal protections afforded conventional home buyers apply to a purchaser under a contract for deed. *Id.*

This paucity of remedies led to abusive practices by sellers in *colonias. Id.* For example, sellers have sold individual tracts to two or more buyers, sold lots without a written contract, and placed liens on lots subsequent to the sale without informing the purchaser. *Id.* Sellers have also misrepresented the availability of water, sewer service and other utilities, and purchasers are often not informed that the property lies in a flood plain or is otherwise unsuitable for habitation. *Id.*

The magnitude of problems stemming from the development of *colonias* and the role that contracts for deed play in allowing these problems to develop led some parties to call for an outright prohibition on these conveyances. *Id.* However, low income families needing housing currently have no other alternatives, as few, if any, banks or other conventional financial institutions are willing to lend, and few insurers will provide coverage for *colonias. Id.*

S.B. 336 originally provided that a seller who fails to transfer recorded legal title within thirty days of receipt of the purchaser's final payment faced a daily penalty equal to a daily payment under the executory contract. *Id.* As enacted, however, the bill imposes a penalty of $250 a day for each day the seller remains in

---

**3.** We will refer to Section 5.102 as it was numbered when originally enacted. As noted previously, Section 5.102 was amended and renumbered by Act of June 13, 2001, 77th Leg., R.S., ch. 693, § 1, and its current version is found at Tex. Prop.Code Ann. § 5.079 (Vernon Supp.2003).

violation beginning on the 31st day and ending on the 90th day after the date the seller receives the final payment due under the contract. The penalty increases to $500 per day for each day the seller fails to transfer title after the 90th day. *Id.*

Section 5.102 was amended and renumbered during the 77th Legislative Session. SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSES, Tex. S.B. 198, 77th Leg., R.S. (2001). Introduced as S.B. 198, the bill removed the income and geographical brackets and extended state-wide protection to purchasers of real property by executory contract. *Id.* Signed in the Senate and House on May 18, 2001, and by the Governor on June 13, 2001, S.B. 198 became effective on September 1, 2001.

While numerous changes were made to this chapter of the Texas Property Code, the amendments to Section 5.102, renumbered as Section 5.079, are the focus of the issue at bar. Section 5.079(b) provides that the seller who fails to transfer title upon receipt of the final payment is liable for reasonable attorney's fees and liquidated damages. SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSES, Tex. S.B. 198, 77th Leg., R.S. (2001). Thus, the "penalty" language of Section 5.102 was replaced with "liquidated damages" and provision was made for recovery of reasonable attorney's fees. This statutory change applies only to a violation occurring on or after September 1, 2001. *Id.* A violation pre-dating the effective date of the amendment is governed by the law in effect when the violation occurred, and the former law is continued in effect for that purpose. *Id.* Thus, for purposes of this appeal, we must look to Section 5.102(b).

### IS THERE A PRIVATE CAUSE OF ACTION?

█ The language of subsection (a) was not changed when Section 5.102 was amended and renumbered as Section 5.079. SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSES, Tex. S.B. 198, 77th Leg., R.S. (2001). In any event, Section 5.079(a) applies to an executory contract on or after September 1, 2001, regardless of when the contract was entered into. *Id.* Thus, Brown was required to transfer to De La Cruz recorded legal title no later than July 9, 1997, the thirtieth day after Brown received the final payment.

The change in law made by Section 5.079(b) applies only to a violation that occurred on or after September 1, 2001; the language of Section 5.102(b) remains in effect for the case at bar. *Id.* Brown is subject to a penalty of $250 a day for each day he failed to transfer title during the period beginning July 10, 1997 and ending September 9, 1997; and $500 per day for each day after September 10, 1997 until March 30, 2001, when title was finally transferred. Brown contends that this statutory penalty applies to enforcement by the State of Texas through the Office of the Attorney General and does not give rise to a private cause of action. He relies on amended Section 5.079, which explicitly provides that the seller "is liable to the purchaser … for liquidated damages" in arguing that the Legislature obviously did not intend a private cause action to be available until after the 2001 amendments. TEX.PROP.CODE ANN. § 5.079.

█ Article IV, Section 22 of the Texas Constitution defines the powers and duties of the Texas Attorney General:

[The Attorney General] shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party … and perform such other duties as may be required by law.

TEX. CONST. art. IV, § 22. The Legislature has expanded the Attorney General's authority to include representing the State before the courts of appeals. *See* TEX. GOV'T CODE ANN. § 402.021 (Vernon 1998); *El Paso Electric Company v. Texas Department of Insurance,* 937 S.W.2d 432, 438 (Tex.1996). For suits in district court, the Constitution provides that the State shall be represented by either the District Attorney or the County Attorney, as determined by the Legislature. *See* TEX. CONST. art. V, § 21; *El Paso Electric,* 937 S.W.2d at 438. This constitutional provision, however, does not preclude the Legislature, pursuant to the authority delegated to it under Article IV, Section 22, from empowering the Attorney General to likewise represent the State in district court. *El Paso Electric,* 937 S.W.2d at 438. While there is no general statute authorizing the Attorney General to represent the State and its agencies in district court, the Legislature has provided for such representation in particular types of cases. *Id.*

Section 5.102 does not contain any language from which it can be concluded that the Legislature intended the State to collect the penalty in a suit filed by the Attorney General. Significantly, there is no language specifically obligating or authorizing the Attorney General to enforce the penalty by a civil suit. By contrast, there are numerous statutes which not only provide for a civil penalty but further specify that the Attorney General is authorized to file suit to collect the penalty on behalf of the State. *See e.g.,* TEX.AGRIC. CODE ANN. § 18.009 (Vernon Supp.2003) (penalty for violating subchapter or rule adopted under the subchapter relating to organic standards and certification); TEX. BUS. & COM.CODE ANN. § 38.302 (Vernon 2002)(penalty for violating injunction related to telephone solicitation); TEX.FIN.CODE ANN. § 31.108 (Vernon 1998)(penalty against a state bank for failing to file a certain report); TEX.HUM.RES.CODE ANN. § 32.0211 (Vernon 2001)(penalty for violation of prohibition against conflict of interest); TEX.INS.CODE ANN. § 101.105 (Vernon Pamph.2003)(penalty for violations of Chapter 101 of Insurance Code); TEX.NAT. RES.CODE ANN. § 61.018 (Vernon 2001)(penalty for violations of Chapter 61 of Natural Resources Code); TEX.TRANSP. CODE ANN. § 21.154 (Vernon 1999)(penalty for violating chapter related to administration of aeronautics); TEX.UTIL.CODE ANN. § 15.028 (Vernon 1998)(penalty against a public utility, customer owned pay telephone service provider, or affiliate for certain acts or omissions).[4] Examples of such provisions are also found throughout the Property Code. *See e.g.,* TEX.PROP. CODE ANN. § 12.017(i)(authorizing attorney general to file suit to collect civil penalty against a title insurance company officer for filing a false affidavit that mortgagor

---

4. While some statutes provide for the penalty and in the same statute authorize the Attorney General to prosecute a suit to collect them, some statutes are more general. *See e.g.,* TEX.GOV'T CODE ANN. § 442.012 (Vernon 1998)(authorizing attorney general to file suit to recover on behalf of the state a civil penalty provided by Chapter 442 of the Government Code); TEX.PARKS & WILDLIFE CODE ANN. § 86.025 (Vernon 2002)("At the request of the director, the attorney general ... shall bring suit for injunctive relief, to recover a civil penalty, to recover the value of material taken in violation of this chapter, or for any appropriate combination of these remedies."); TEX.WATER CODE ANN. § 7.105(a)(Vernon 2000)("On the request of the executive director or the [Water Commission], the attorney general shall institute a suit in the name of the state for injunctive relief under Section 7.032, to recover a civil penalty, or for both injunctive relief and a civil penalty."). Neither the Property Code nor the relevant subchapters at issue here contain a general provision authorizing the Attorney General to collect the penalty prescribed by Section 5.102.

has paid off mortgage); TEX.PROP.CODE ANN. § 74.709 (Vernon Supp.2003)(authorizing attorney general to file suit to collect civil penalty against a holder of property who fails to file a report or deliver property); TEX.PROP.CODE ANN. § 221.075 (Vernon Supp.2003)(under the Texas Timeshare Act, attorney general may institute action against a managing entity to collect civil penalty for failure to file a statement required by Section 221.074); TEX.PROP.CODE ANN. § 301.112 (attorney general may file suit to collect civil penalty assessed against a party engaging in discriminatory housing practice; statute notes that civil penalty is assessed by commission to "vindicate the public's interest"). In the absence of specific legislation, the Attorney General is not authorized to file suit to collect the penalty provided for by Section 5.102(a).

In reviewing the circumstances under which the original statute was enacted and legislative history, it is clear that the Legislature was addressing the problems an individual purchaser faced when entering into an executory contract to purchase land in a *colonia*. SENATE COMMITTEES ON INTERNATIONAL RELATIONS, TRADE & TECHNOLOGY, BILL ANALYSES, Tex. S.B. 336, 74th Leg., R.S. (1995). The bill's history noted that a purchaser had very few rights or remedies under a contract for deed, and that abusive practices by sellers of *colonia* lots were common. *Id.* With the 2001 amendments, the Legislature made the contract for deed protections applicable statewide. SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSES, Tex. S.B. 198, 77th Leg., R.S. (2001). These amendments buttress our conclusion that the purpose of this legislation was to provide a measure of protection and legal recourse to the purchasers who have been victimized in the past.

■ We have already determined that Section 5.102 did not authorize the Attorney General to file suit on behalf of the State to collect the penalty. If we accept Brown's argument that Section 5.102 did not provide a private cause of action to a purchaser, then the statute is rendered meaningless and unenforceable as no one would be authorized to file suit to collect the penalty. Such a construction is impermissible as the Legislature is never presumed to have done a useless thing. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex.1981); *Collins v. County of El Paso*, 954 S.W.2d 137, 147 (Tex.App.-El Paso 1997, pet. denied). Further, in construing a statute, it is presumed that the entire statute is intended to be effective and a result feasible of execution is intended. TEX.GOV'T CODE ANN. § 311.021. We therefore conclude that the Legislature intended that purchasers such as De La Cruz would have the ability to maintain a private cause of action to recover the civil penalty established by Section 5.102. Issues One through Seven are sustained.

## POSTURE OF AFFIRMATIVE DEFENSES

■ De La Cruz asks that we reverse and render judgment in his favor. Although we agree with De La Cruz that Section 5.102 provides him with a private cause of action, rendition is not an appropriate remedy due to the procedural posture of this case. Both parties moved for summary judgment on the private cause of action issue. Brown did not move for summary judgment on his affirmative defenses but simply raised them in response to De La Cruz's motion for summary judgment. Consequently, the trial court could not have rendered a take-nothing judgment on those affirmative defenses. In other words, the affirmative defenses might have served to defeat De La Cruz's

motion for summary judgment but could not serve as an independent basis for the rendition of judgment in Brown's favor. Because the trial court rendered a take-nothing judgment, it is apparent that the trial court addressed only the argument pertaining to the construction of Section 5.102 and did not address Brown's affirmative defenses raised in his response to the motion for summary judgment. Therefore, remand rather than rendition is the appropriate remedy. Having sustained Issues One through Seven, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.