**Columbus P. BROWN, a/k/a
C.P. Brown, Petitioner,**

v.

**Arturo DE LA CRUZ, Respondent.**

No. 03–0703.

Supreme Court of Texas.

Argued April 14, 2004.

Decided Dec. 3, 2004.

---

7. Tex.R.App. P. 59.1.

Bryan H. Hall, Richard & Hall, P.C., El Paso, Jeffery B. Thompson, Alto, NM, for petitioner.

Anthony C. Aguilar, Law Office of Tony Aguilar, El Paso, for respondent.

Deborah G. Hankinson, Rick Thompson, Law Office of Deborah Hankinson, PC, Dallas, for amicus curiae Texas Financial Services Association.

Greg Abbott, Atty. Gen., Danica Lynn Milios, Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Office of Atty. Gen., Austin, for amicus curiae State of Texas.

Michael S. Lee, The Lee Firm, Corpus Christi, for amicus curiae Jose Torres.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice OWEN, Justice O'NEILL, Justice WAINWRIGHT, and Justice MEDINA joined.

Since 1995, the Texas Property Code has required that sellers by executory contract (or "contract for deed") of certain residential property in Texas must record and transfer a deed within thirty days of final payment.[1] In this case, a seller subject to the statute delivered title almost four years too late.

From 1995 to 2001, the Property Code provided that failure to comply was "subject to a penalty" of up to $500 a day.[2] By

---

1. Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4982, 4988 (amended 2001) (current version at Tex. Prop. Code § 5.079(a)).

2. *Id.*

amendment in 2001, the Code now provides that such a seller is "liable to the purchaser for ... liquidated damages" in the same amount.[3] The 2001 amendment clearly provides a private cause of action for purchasers; the question presented is whether the original statute (which alone governs this case) did as well.

The trial court held it did not, and granted a take-nothing summary judgment. The court of appeals reversed.[4] For the reasons stated below, we agree with the trial court that a private cause of action was not created until 2001, and accordingly reverse the court of appeals' judgment.

## I

On December 3, 1984, Columbus P. Brown agreed to sell unimproved real property described as Lot 3, Block 5, Roseville Subdivision, El Paso County, Texas to Arturo De La Cruz for $13,500. The executory contract provided for immediate possession by De La Cruz, but Brown was to retain title until De La Cruz paid the purchase price plus 12% interest (totaling $26,063.83). De La Cruz's wife (whom he had remarried during the contract period) personally made the final payment on June 9, 1997, and requested that her name be added to the deed. Because De La Cruz was not present and only he was listed as buyer on the contract for deed, Brown's employees directed her

to an attorney to accomplish her request. De La Cruz did not hire an attorney due to the expense, and Brown did not deliver a warranty deed within thirty days, as required both by the parties' contract and the enactment of Texas Property Code section 5.102 in 1995.[5]

Almost four years later, still having received no deed, De La Cruz filed the present lawsuit against Brown on January 26, 2001. He alleged no lost sales or other actual damages of any kind; instead, he sought $664,500 in section 5.102 statutory penalties—almost fifty times the original sales price. On March 30, 2001, Brown recorded what he denominated a "replacement warranty deed" delivering title to De La Cruz.

The parties filed cross-motions for summary judgment, De La Cruz contending he was entitled to the statutory penalties, and Brown contending section 5.102 did not grant De La Cruz a private cause of action, and alternatively that recovery was barred by laches and the constitutional limit on excessive fines.[6] The trial court granted Brown's motion for summary judgment without specifying reasons.

The court of appeals reversed, finding nothing in section 5.102 authorizing the Attorney General to collect the statutory penalty, and no one else to enforce the statute if De La Cruz could not.[7] The court remanded for consideration of

---

3. Tex. Prop.Code § 5.079(b).

4. 109 S.W.3d 73, 79–80.

5. *See* Act of June 13, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1319, 1328; Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4982, 4988 (amended 2001); *see also Salinas v. Beaudrie,* 960 S.W.2d 314, 319 (Tex.App.-Corpus Christi 1997, no pet.) (holding section 5.102 applicable to contract for deed if final payment occurred after September 1, 1995).

6. *Tex. Const.* art. I, § 13 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."); *see Pennington v. Singleton,* 606 S.W.2d 682, 690 (Tex.1980) (holding constitutional limit on excessive fines extends to civil penalties).

7. 109 S.W.3d at 78–79.

Brown's other defenses.[8] We granted Brown's petition to review this issue of statutory construction.[9]

## II

■ When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent.[10] For example, in *City of Beaumont v. Bouillion*, we held that the Texas Constitution created a private action for damages only if the language of the specific provisions involved clearly implied one.[11] Thus, we noted that the takings section implied a private action for damages by prohibiting takings *"without adequate compensation,"* [12] while the free speech and assembly sections implied only a private equitable action (not damages) by declaring that violations *"shall be void."* [13] Federal law is to the same effect.[14]

■ Accordingly, the answer in this case must be found in the language of section 5.102. When enacted in 1995, that section provided in pertinent part:

(a) The seller shall transfer recorded, legal title of the property covered by the executory contract to the purchaser not later than the 30th day after the date the seller receives the purchaser's final payment due under the contract.

(b) A seller who violates Subsection (a) *is subject to a penalty* of:

(1) $250 a day for each day the seller fails to transfer the title to the purchaser during the period that begins the 31st day and ends the 90th day after the date the seller receives the purchaser's final payment due under the contract; and

(2) $500 a day for each day the seller fails to transfer title to the purchaser after the 90th day after the date the seller receives the purchaser's final payment due under the contract.[15]

The statute expressly provides for a penalty, but is silent about who may collect it.

Sixty years ago, we construed a statute containing precisely the same language to exclude a private action for damages. In *Agey v. American Liberty Pipe Line Co.*, an oil producer brought suit under a statute providing that violations of certain rules governing pipelines "shall be subject to a penalty" of up to $1000 per day.[16] The statute in that case gave more di-

---

8. *Id.* at 79–80.

9. Tex. Gov't Code § 22.001(a)(3).

10. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 260 (Tex. 2002).

11. 896 S.W.2d 143, 148–49 (Tex.1995).

12. *Id.* at 149; *see* Tex. Const. art. I, § 17 (emphasis added); *see also Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980) ("The Constitution itself is the authorization for compensation for the destruction of property.").

13. Tex. Const. art. I, § 29 (emphasis added); *see* Tex. Const. art. I, §§ 8, 27; *see also Bouillion*, 896 S.W.2d at 148–49.

14. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (holding statute declaring certain contracts "void" implied a private right of action in equity to declare them so, but not a private action for monetary damages). While we recognize it is sometimes proper for common-law courts to create causes of action when federal tribunals should not, *see Alexander v. Sandoval*, 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the rule should be the same in either system when the right or remedy stems entirely from legislative enactment.

15. Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4982, 4988 (amended 2001) (emphasis added).

16. 172 S.W.2d 972, 974 (Tex.1943).

rection than section 5.102, in that it directed half of the penalty was "recoverable in the name of the State" and the other half "in the name of and for the use of the party or parties aggrieved."[17] Nevertheless, we concluded "that a statute which imposes a penalty must be strictly construed, and that a person who seeks to recover a penalty thereunder must bring himself clearly within the terms of the statute."[18] Because the individual in that suit had not joined the attorney general and nothing in the statute authorized him to bring suit on the State's behalf, we held the statute did not authorize him to bring the action on his own.[19]

■ We believe this is still the correct interpretation. Generally, a statutory penalty or fine is not payable to a private litigant.[20] For example, the Texas Whistleblower Act authorizes a private action for "damages" to private litigants,[21] but a "civil penalty" of up to $15,000 collectible only by public prosecutors.[22] Virtually all other statutes that imposed a daily penalty in 1995 when section 5.102 was enacted

authorized collection only by the Attorney General or some other governmental entity or representative.[23] Without some indication in section 5.102 that this penalty belongs to De La Cruz, we do not believe he has brought himself so clearly within the statute's terms as to justify implying a private cause of action.

This construction of section 5.102 is supported by the subsequent amendments to it.[24] When the section was amended and renumbered as Property Code section 5.079 in 2001, paragraph (a) was left intact, but paragraph (b) was amended to read:

(b) A seller who violates Subsection (a) is *liable to the purchaser for:*

(1) *liquidated damages in the amount of:*

(A) $250 a day for each day the seller fails to transfer the title to the purchaser during the period that begins the 31st day and ends the 90th day after the date the seller receives the purchaser's final payment due under the contract; and

---

**17.** *Id.;* Act of May 4, 1977, 65th Leg., R.S., ch. 871, § 111.263, 1977 Tex. Gen. Laws 2345, 2591 (current version at Tex. Nat. Res. Code § 111.263).

**18.** *Agey,* 172 S.W.2d at 974.

**19.** *Id.*

**20.** *See Rosser v. Squier,* 902 S.W.2d 962, 962 (Tex.1995) (noting contempt fine is payable to the court); *Sportscoach Corp. of Am., Inc. v. Eastex Camper Sales, Inc.,* 31 S.W.3d 730, 734–35 (Tex.App.-Austin 2000, no pet.) (noting Motor Vehicle Commission Code specifically granted Board power to assess civil penalties but not to award damages to private parties).

**21.** Tex. Gov't Code § 554.003(a).

**22.** *Id.* at § 554.008.

**23.** *See, e.g.,* Tex. Agric. Code §§ 13.007, 13.307, 13.357, 13.406, 18.009, 18.054,

19.013, 71.012, 71.059, 71.117, 72.046, 73.010, 74.008, 101.0185, 102.1045, 103.15, 132.0715; Tex. Educ.Code § 132.155; Tex. Gov't Code §§ 305.033, 572.033; Tex. Health & Safety Code §§ 104.043, 142.014, 145.0121, 147.013, 241.055, 242.065, 243.014, 244.014, 245.015, 247.045, 248.054, 249.012, 251.065, 401.381, 431.0585, 432.018, 464.017, 502.015, 571.023, 753.010, 773.063; Tex. Nat. Res.Code §§ 131.266, 211.033; Tex. Parks & Wild.Code § 86.024; Tex. Transp. Code §§ 21.154, 391.035, 394.081, 503.095; Tex. Water Code §§ 11.082, 29.051 (none authorizing collection of penalty provided for in statute by private individual).

**24.** *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 223 (Tex.2002) (looking at legislative history of subsequent amendments to determine Legislature's intent to change statute's meaning).

(B) $500 a day for each day the seller fails to transfer title to the purchaser after the 90th day after the date the seller receives the purchaser's final payment due under the contract; and

(2) *reasonable attorney's fees.*[25]

De La Cruz asserts this amendment made explicit what the Legislature had intended in 1995. For three reasons, we disagree.

First, if the Legislature intended merely to clarify who could recover the penalty, the substitution of "liable to the purchaser" would have been sufficient. Instead, by changing "penalty" to "liquidated damages" and adding a provision for attorney's fees, the Legislature changed not just the recipient but the nature of the amounts assessed.

Second, the Legislature made its amendment of paragraph (b) applicable only to violations occurring after September 1, 2001; "[a] violation that occurs before September 1, 2001, is covered by the law in effect when the violation occurred, and the former law is continued in effect for that purpose." [26] By contrast, paragraph (a), which was left intact, was made applicable to all contracts for deed, whether signed before or after the amendment's effective date. If the Legislature intended neither to be a substantive change, it is hard to see why one was made prospective only.

Third, the Bill Analysis to the 2001 amendment indicates the amendment was a change rather than a clarification:

Redesignates existing Section 5.102 as Section 5.079. TITLE TRANSFER. Provides that a seller who violates Subsection (a) *is liable to the purchaser for, rather than subject to a penalty of, liquidated damages* in certain amounts, and reasonable attorney's fees.[27]

In *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* we reviewed similar language in a bill analysis, and concluded that by describing the amendment as making the Motor Vehicle Board's jurisdiction "exclusive, *rather than general*" as to some *"rather than all aspects"* of marketing, the Legislature intended to change prior law.[28] A similar analysis supports a similar conclusion here.

 Penal statutes are still strictly construed,[29] and nothing in section 5.102 as originally enacted suggests that a private cause of action was intended. By longstanding precedent, a statute providing for a daily penalty unrelated to actual losses must be strictly construed, and may be asserted in a private cause of action only if the statute clearly so provides. As the Legislature did not do so here until 2001, it did not authorize De La Cruz to bring this action on his own.

### III

The court of appeals felt compelled to imply a private cause of action, finding

---

**25.** Act of June 13, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1319, 1327.

**26.** Act of June 13, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1319, 1328.

**27.** Senate Comm. On Intergovernmental Relations, Bill Analysis, Tex. S.B. 198, 77th Leg., R.S. (2001) (emphasis added).

**28.** 84 S.W.3d at 223 (emphasis in original) (quoting Senate Comm. On State Affairs, Bill Analysis, Tex. H.B. 1665, 77th Leg., R.S. (2001) ("[The Bill] [a]mends section 3.01(a) ... to provide that the Board has the exclusive, *rather than general, original* jurisdiction to regulate those aspects, *rather than all aspects,* of the distribution, sale and leasing of motor vehicles.").

**29.** *First Bank v. Tony's Tortilla Factory, Inc.,* 877 S.W.2d 285, 287 (Tex.1994).

that the Attorney General of Texas had no authority to enforce section 5.102, and fearing that otherwise the provision would go unenforced. In response to our request, the Attorney General in an amicus brief conceded that no action for section 5.102's penalties had ever been filed by that office, but asserted the authority to do so under the Texas Deceptive Trade Practices–Consumer Protection Act.[30]

As the Attorney General is not a party in this proceeding, we cannot decide this question without rendering an advisory opinion, which the separation-of-powers provision of the Texas Constitution forbids.[31] Nevertheless, even if future events prove that section 5.102 is unenforceable by any public official, attorney, or agency, we do not believe that alone would justify an implied private cause of action here for several reasons.

■ First, as noted above, this is a penal statute that would in many instances impose a fine far beyond the damages that a purchaser is likely to suffer. As we held long ago in *Agey*, the Legislature may grant private standing to bring such actions, but it must do so clearly.[32] Section 5.102's silence regarding private causes of action is not made any clearer by its similar silence on public ones.

■ Second, legislative silence (as we recently observed) may reflect many things, including implied delegation to the courts or administrative agencies, lack of consensus, oversight, or mistake.[33] From the record here, we cannot presume that the Legislature's silence regarding who may bring suit under section 5.102 was necessarily the first rather than any of the others. It is certainly true that we do not lightly presume the Legislature may have done a useless act,[34] and will not read statutory language to be pointless if it is reasonably susceptible of another construction.[35] But as both these statements suggest, we must recognize that possibility. It is at least theoretically possible that legislators—like judges or anyone else—may make a mistake. That does not give us the power (as the United State Supreme Court has stated) "to legislate . . . to fill any *hiatus* Congress has left." [36]

Third, while we must look to a statute's underlying purpose,[37] guidance from that direction will usually be less helpful when the issue is not whether a wrong should be addressed but whether private parties are entitled to do so. Modern legislatures may delegate enforcement to executive departments, administrative agencies, regulatory commissions, local governments and districts, as well as the criminal or civil courts; with such a myriad of tools at the Legislature's disposal, we cannot always

**30.** Tex. Bus. & Com.Code §§ 17.41–.63.

**31.** Tex. Const. art. II, § 1; *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 164 (Tex.2004).

**32.** *Agey v. Am. Liberty Pipe Line Co.,* 141 Tex. 379, 172 S.W.2d 972, 974 (1943).

**33.** *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship,* 146 S.W.3d 79, 84 (Tex. 2004).

**34.** Tex. Gov't Code § 311.021(2); *In re Missouri Pac. R. Co.,* 998 S.W.2d 212, 216 (Tex. 1999).

**35.** *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995).

**36.** *Touche Ross & Co. v. Redington,* 442 U.S. 560, 579, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (quoting in part *Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963)).

**37.** Tex. Gov't Code § 311.023(1); *PPG Indus.,* 146 S.W.3d at 84.

assume that we must be the hammer.[38]

■ Finally, the unique bifurcated structure of the Texas court system calls for peculiar deference to legislative choices regarding the method of enforcement. Criminal and civil jurisdiction is divided among Texas's highest courts, and in many counties among trial courts as well. While only a civil penalty is involved here, penal statutes often include criminal penalties; too permissive an implication of private civil actions to enforce penal acts would sometimes supplant not just the criminal law but the criminal courts as well.[39] As no higher tribunal can settle jurisdictional disputes we might have with our sister court, we must be especially reticent to adopt a rule that may assume jurisdiction the Legislature never intended.

Several courts of appeals have cited a rule of "necessary implication"—that when a legislative enforcement scheme fails to adequately protect intended beneficiaries, the courts must imply a private cause of action to effectuate the statutory purposes.[40] Some cite at the same time a contradictory rule of strict construction—that causes of action may be implied only when a legislative intent to do so appears in the statute as written.[41] The basis for the former rule appears to be federal cases that have now been abandoned in favor of the latter rule.[42] To the extent there has been confusion about the Texas rule, we too disapprove of the former in favor of the latter.

## IV

While we have sometimes employed several other tools of statutory construction, none provides any additional guidance here.

---

**38.** *See, e.g., Nabors Corporate Servs., Inc. v. Northfield Ins. Co.,* 132 S.W.3d 90, 100 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (holding presumed legislative intent that defendant bear loss under Texas Property and Casualty Insurance Guaranty Act did not justify granting plaintiff a private right of action against it).

**39.** *See State v. Morales,* 869 S.W.2d 941, 942 (Tex.1994) (refusing to declare state's sodomy statute unconstitutional); *Spurlock v. Johnson,* 94 S.W.3d 655, 658 (Tex.App.-San Antonio 2002, no pet.) (holding Texas Penal Code does not create private causes of action); *A.H. Belo Corp. v. Corcoran,* 52 S.W.3d 375, 379 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (same).

**40.** *See, e.g., Serv. Fin. v. Adriatic Ins. Co.,* 46 S.W.3d 436, 447–48 (Tex.App.-Waco 2001), *judgm't vacated w.r.m.,* 51 S.W.3d 450 (Tex. App.-Waco 2001, no pet.); *Stewart Title Guar. Co. v. Becker,* 930 S.W.2d 748, 754 (Tex.App.-Corpus Christi 1996, writ denied); *Cole v. Huntsville Mem'l Hosp.,* 920 S.W.2d 364, 372 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *Litton Indus. Prods., Inc. v. Gammage,* 644 S.W.2d 170, 176 (Tex.App.-Houston [14th Dist.] 1982), *aff'd in part, rev'd in part on other grounds,* 668 S.W.2d 319 (Tex.1984).

**41.** *See Becker,* 930 S.W.2d at 754–55; *Cole,* 920 S.W.2d at 372.

**42.** *See Alexander v. Sandoval,* 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (noting Court abandoned understanding that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and has not returned to it since); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, ... what must ultimately be determined is whether Congress intended to create the private remedy asserted."); *Cannon v. Univ. of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.").

Legislative history may sometimes provide insight as to legislative intent,[43] but in this case there is very little on the question before us. One of section 5.102's co-authors thought the Attorney General would "continue to sue developers and to make developers accountable for failure to meet contractual agreements with purchasers;"[44] but while this supports the Attorney General's arguments, it indicates nothing either way regarding private causes of action.[45]

Additionally, when the Legislature includes a right or remedy in one part of a code and omits it in another, that may be precisely what the Legislature intended.[46] But here other parts of Chapter 5 of the Texas Property Code expressly provided for *both* public and private causes of action.[47] We cannot tell from section 5.102's surrounding provisions which remedy the Legislature may have intended to omit here.

Finally, we recognize that even if a statute does not explicitly create a private cause of action, in some circumstances it may establish a standard of conduct that is enforceable under pre-existing common-law actions.[48] But as section 5.102 required Brown to do nothing more than what the parties' contract already required, neither party asserts it created a new standard of conduct. Instead, it created a new penalty for which there was no common-law precedent. Thus, it must be

43. *See* Tex. Gov't Code § 311.023(3); *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148 (Tex.1995).

44. Debate on Tex. S.B. 336 on the Floor of the Senate, 74th Leg., R.S. 48 (Mar. 1, 1995) (transcript available from Texas State Library & Archives Commission).

45. De La Cruz filed an affidavit in this Court by a co-author of section 5.102 asserting that the Legislature's intent was to create a private cause of action, but after-the-fact statements by individual legislators are not legislative history, and we accord them little weight. *In re Doe,* 19 S.W.3d 346, 352 (Tex.2000).

46. *PPG Indus., Inc.,* 146 S.W.3d at 84; *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) (presuming every word excluded from a statute was excluded for a purpose); *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (holding no private action should be implied when a statutory provision is silent on the issue but flanked by provisions that explicitly grant private causes of action). In *Vail v. Texas Farm Bureau Mutual Insurance Co.,* 754 S.W.2d 129, 136 (Tex.1988), we implied a private cause of action for insureds against their insurer for unfair claims settlement practices even though section 21.21-2 of the Insurance Code governing such practices did not, noting that the Insurance Code explicitly provided for private actions that in-

corporated violations of other sections, and that all remedies were declared to be cumulative.

47. Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4982, 4985 (amended 2001) (providing that seller's failure to provide purchaser with survey of property, written notice whether the property has utilities, and other information is actionable in a *public or private suit* under the DTPA) (emphasis added) (current version at Tex. Prop.Code § 5.069(a)(1)–(3)).

48. *Austin v. HealthTrust, Inc.—The Hosp. Co.,* 967 S.W.2d 400, 403 (Tex.1998) (holding that while courts are not bound by the Legislature's policy decisions when considering whether to create a common-law whistleblower action, "the boundaries the Legislature has drawn do inform our decision."); *compare Mission Petroleum Carriers, Inc. v. Solomon,* 106 S.W.3d 705, 714–15 (Tex.2003) (holding drug-testing regulations did not impose duty of care after balancing risk/utility factors) *and Perry v. S.N.,* 973 S.W.2d 301, 307 (Tex.1998) (holding that Texas courts normally derive duty from the common law and look to statutes only for the standard of conduct), *with Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 549 (Tex.1985) (holding city ordinance legislatively imposed standard of conduct for property owner in premises liability claim).

construed strictly, in accordance with the rules noted above.[49]

\* \* \* \* \* \*

"The very balance of state governmental power imposed by the framers of the Texas Constitution depends on each branch, and particularly the judiciary, operating within its jurisdictional bounds." [50] By implying a private cause of action in a statute that did not provide for one, the court of appeals exceeded those bounds. Accordingly, we reverse that court's judgment and render judgment that De La Cruz take nothing.

Justice SMITH concurred in the judgment only.

---

**49.** *See Bouillion*, 896 S.W.2d at 150 (holding that because there was no common law action for a constitutional tort, it was up to the Legislature to create such a remedy).

**50.** *State v. Morales*, 869 S.W.2d 941, 949 (Tex. 1994).