

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 25, 2007

The Honorable Susan Combs
Texas Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

Opinion No. GA-0549

Re: Method of calculating deduction under section 403.302(d)(4), Government Code, of the total taxable value of school district property located in a tax increment reinvestment zone (RQ-0570-GA)

Dear Comptroller Combs:

You ask about the duties of the Comptroller of Public Accounts (the "Comptroller") under section 403.302(d)(4) of the Texas Government Code.[1] Section 403.302 requires the Comptroller to conduct an annual study in each Texas school district to determine the total taxable value of all property in each district. *See* TEX. GOV'T CODE ANN. § 403.302(a) (Vernon Supp. 2006); *see also* Tex. Att'y Gen. Op. No. JC-0152 (1999) at 8–9 (discussing purpose and history of section 403.302). The total taxable value amount from the study is used in calculating the state's financial support for school districts. *See* TEX. GOV'T CODE ANN. § 403.302(g) (Vernon Supp. 2006); TEX. EDUC. CODE ANN. §§ 41.001 (Vernon 2006), 41.002, 42.302(a) (Vernon Supp. 2006).

The total taxable value of school district property under section 403.302 is the "market value of all taxable property less" certain specified exemptions and deductions. TEX. GOV'T CODE ANN. § 403.302(d) (Vernon Supp. 2006). You characterize the specified exemptions and deductions as "the property values on which the school district may not impose a tax because of the various state-mandated exemptions [and] . . . property value 'lost' to other provisions, such as tax increment financing." Request Letter, *supra* note 1, at 1; *see also* TEX. TAX CODE ANN. ch. 311 (Vernon 2002 & Supp. 2006) (governing tax increment financing).

Your specific question pertains to the deductions that relate to tax increment financing contained in section 403.302(d)(4) of the Government Code, which provides:

> For the purposes of this section, "taxable value" means the market
> value of all taxable property less:
>
> . . . .

---

[1]*See* Letter from Honorable Susan Combs, Texas Comptroller of Public Accounts, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Feb. 19, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

(4)   subject to Subsection (e), the total dollar amount of any captured appraised value of property that:

(A)   is within a reinvestment zone created on or before May 31, 1999, or is proposed to be included within the boundaries of a reinvestment zone as the boundaries of the zone and the proposed portion of tax increment paid into the tax increment fund by a school district are described in a written notification provided by the municipality or the board of directors of the zone to the governing bodies of the other taxing units in the manner provided by Section 311.003(e), Tax Code, before May 31, 1999, and within the boundaries of the zone as those boundaries existed on September 1, 1999, including subsequent improvements to the property regardless of when made;

(B)   generates taxes paid into a tax increment fund created under Chapter 311, Tax Code, under a reinvestment zone financing plan approved under Section 311.011(d), Tax Code, on or before September 1, 1999; and

(C)   is eligible for tax increment financing under Chapter 311, Tax Code . . . .

TEX. GOV'T CODE ANN. § 403.302(d) (Vernon Supp. 2006). You wish to know whether this section requires you, in your calculation of the total taxable value of school district property, to subtract the dollar amount of all of the captured appraised value of property located in the reinvestment zone, or to subtract the amount of only the percentage of the captured appraised value that generates the school district tax actually paid into the tax increment fund. *See* Request Letter, *supra* note 1, at 2.

In addressing your question it is helpful to understand the operation of a municipality's tax increment reinvestment zone and a school district's involvement in the zone. Tax increment financing is a mechanism whereby municipalities can raise funds to finance public improvements in blighted or underdeveloped areas. *See City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 296 (Tex. 1987). Under the Tax Increment Financing Act, chapter 311 of the Texas Tax Code, a municipality designates an area as a reinvestment zone and establishes the tax increment base as the total appraised property values within the zone on the date the zone is created. *See* TEX. TAX CODE ANN. §§ 311.001, .012(c) (Vernon 2002). As improvements to the blighted or underdeveloped area are made, the appraised property values are expected to increase. *See id.* § 311.004(a)(7) (Vernon Supp. 2006); *El Paso County Cmty. Coll. Dist. v. City of El Paso*, 698 S.W.2d 248, 250 (Tex. App.—Austin 1985), *rev'd on other grounds*, 729 S.W.2d 296 (Tex. 1987). The increase in the appraised property value above the tax increment base is "captured." *See* TEX. TAX CODE ANN. § 311.012(b) (Vernon 2002). The tax revenue derived by the municipality from the captured appraised property value—the tax increment—is paid into a tax increment fund for the reinvestment

zone. *See id.* §§ 311.012(a), .013(b); *see also* Tex. Att'y Gen. Op. No. GA-0514 (2007) at 2 ("In other words, [the tax increments] are the taxes attributable to the increased value of the real property in the zone due to its development."). Because the tax increment revenue is committed to the development and improvement of the reinvestment zone, the additional revenue derived from the increase in appraised property values and paid into the tax increment fund is not available for the general support of the municipality. *See* TEX. TAX CODE ANN. §§ 311.013(b), .014(b) (Vernon Supp. 2006); *see also* Tex. Att'y Gen. Op. No. MW-337 (1981) at 5.

As a taxing unit, a school district may participate and pay taxes into the tax increment fund under an agreement with the municipality responsible for creating the reinvestment zone. *See* TEX. TAX CODE ANN. §§ 1.04(12) (Vernon Supp. 2006) (defining "taxing unit" under the Tax Code), 311.002(4) (defining "taxing unit" for purposes of chapter 311 with reference to section 1.04), 311.013(f) ("A taxing unit is not required to pay into the tax increment fund any of its tax increment produced from property located in a reinvestment zone . . . unless the taxing unit enters into an agreement to do so with the governing body of the municipality . . . ."). An agreement between the municipality and the school district "must specify the portion of the tax increment to be paid into the fund and the years for which that tax increment is to be paid into the fund."[2] *Id.* § 311.013(f). Under section 311.013, a taxing unit "shall pay into the tax increment fund for the zone an amount equal to the tax increment . . . less . . . a portion, not to exceed 15 percent, of the tax increment produced by the unit as provided by the reinvestment zone financing plan or a larger portion as provided by Subsection (f)." *Id.* § 311.013(b). Thus, the statute authorizes a school district to retain a portion of the tax increment revenues. But, consistent with the chapter 311 financing scheme, the portion of the tax increment paid into the tax increment fund by the school district is no longer available for the general support of the school district. *Cf. id.* § 311.014(b); *see also* Tex. Att'y Gen. Op. No. MW-337 (1981) at 5.

With this background we examine Government Code section 403.302(d)(4). Section 403.302(d)(4) describes the amount of any captured appraised value that is to be subtracted from the market value of a school district's taxable property. *See* TEX. GOV'T CODE ANN. § 403.302(d)(4) (Vernon Supp. 2006). The deductible property value amount must meet the requirements of subdivisions (A)–(C). *See id.* § 403.302(d)(4)(A)–(C). In construing a statute, our primary objective is to determine and give effect to the Legislature's intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We start with the plain and common meaning of the statute's words. *Id.* Words and phrases must be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005); *see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006).

By any measure, section 403.302(d)(4) is not a model of clarity. Nevertheless, under the ordinary reading of the text, it is apparent that the subject of subdivisions (A)–(C) must be "property," and not "value." That is clear because, in subdivision (A), "value" cannot be "within a

---

[2]Prior to 1989, taxing units were required to contribute to the tax increment fund all taxes levied and collected on the increased property values in the reinvestment zone. *See* Act of May 24, 1989, 71st Leg., R.S., ch. 1137, § 25, 1989 Tex. Gen. Laws 4683, 4691–92.

reinvestment zone," but some "property" is; in subdivision (C), "value" cannot be "eligible for tax increment financing under Chapter 311, Tax Code," but some property is; and (B) would have to have the same subject as (A) and (C), lacking, as it does, a subject of its own. Consequently, under the natural reading of the statute, for every "property" that satisfies subdivisions (A), (B), and (C), the "total dollar amount of any captured appraised value" must be subtracted from the "market value of all taxable property." Under this construction, the amount deducted would not be limited to the proportion of school district tax actually paid into the tax increment fund, but rather would be the "total dollar amount of any captured appraised value" of the property.

However, a statutory provision should not be given a meaning inconsistent with other provisions of the statute, although it might possibly be susceptible to a different construction if standing alone. *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978). Section 403.302(d)(4) is, at the outset, expressly made "subject to Subsection (e)." TEX. GOV'T CODE ANN. § 403.302(d)(4) (Vernon Supp. 2006). And subsection (e), in turn, provides that the "total dollar amount deducted under [section 403.302(d)(4)] . . . may not be increased by a change made . . . in the *portion of the tax increment retained by the school district*." *Id.* § 403.302(e) (emphasis added). If it were true that subsection (d) required deducting the total amount of captured appraised value—*regardless* of the amount retained by the school district—then subsection (e) would have no effect whatsoever. Subsection (e) necessarily presumes that a change in the amount retained would, absent its specific prohibition, require a change in the amount deducted. If changes in the amount retained can never affect the amount deducted, then the prohibition of subsection (e) would be superfluous.

Thus, the most natural reading of the text of subsection (d) runs contrary to the principle that we must give effect to every word in a statute and, if possible, should not treat any statutory language as mere surplusage. We should not lightly presume that the Legislature did a useless act. *See In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999); *see also State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006). If possible, we must construe a statute's provisions in harmony with each other. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984).

The canons of statutory construction therefore require us to attempt to construe subsection (d) differently in order to render subsection (e) effective, useful, and in harmony with subsection (d). We believe that the text of subsection (d) permits such an alternative reading. Namely, although "property" remains the subject to the verbs of subdivisions (A)–(C), nothing in the statute specifies that "property" is a single, indivisible noun. Thus, it is possible to construe subdivision (d)(4)(B) to limit the amount deducted to only that portion of property in a reinvestment zone that generates tax revenue that is actually paid into a tax increment fund. In other words, when a school district elects to remit to a tax increment fund only some of the taxes generated by the property, the remaining portion of the property falls outside subsection (d) because it is generating taxes that are not paid into the tax increment fund. Under this construction, the amount deducted would be proportional to the percentage of property that generates the school district tax actually paid into the fund.

Although we might not reach this construction of subsection (d) in isolation, we believe this latter construction is necessary to give full effect to the terms of subsection (e) as well. Accordingly,

interpreting subsection (d) in harmony with subsection (e), we construe section 403.302(d)(4) of the Government Code to require you, in your calculation of the total taxable value of school district property, to subtract the amount of only the percentage of the captured appraised value that generates the school district tax revenues actually paid into the tax increment fund.

Furthermore, subdivision (A) of section 403.302(d)(4), which establishes time limits by which a reinvestment zone must be established, states that a zone that is only proposed as of May 31, 1999, incorporates "the *proposed portion of tax increment paid into the tax increment fund by a school district*" as stated in the Tax Code section 311.003(e) notification. TEX. GOV'T CODE ANN. § 403.302(d)(4)(A) (Vernon Supp. 2006) (emphasis added); *see also* TEX. TAX CODE ANN. § 311.003(e) (Vernon Supp. 2006) (describing the required contents of a municipality's or county's notification to taxing units of a proposed reinvestment zone). Again, this statutory language would be superfluous if the percentage of the tax increment paid into the tax increment fund were irrelevant to the amount of the captured appraised value deducted. *See In re Mo. Pac. R.R. Co.*, 998 S.W.2d at 216.

Finally, we recognize that limiting a school district's deduction to the percentage of captured appraised value proportional to the percentage of tax increment actually paid into the tax increment fund comports with the purpose of section 403.302. *See* TEX. GOV'T CODE ANN. § 311.023(1), (5) (Vernon 2005) (stating that in construing a statute, a court may consider the object sought to be obtained and the consequences of a particular construction); *McIntyre*, 109 S.W.3d at 745 (same). Because the purpose of section 403.302 is to deduct the value of property that does not generate tax revenue for the general support of the school district or, in your words, to deduct the property values that are "lost" to the district, the amount of the captured appraised value deducted should not be 100 percent where a district retains a percentage of the tax increment for its own use. *See* TEX. GOV'T CODE ANN. § 403.301 (Vernon 2005) (setting forth the policy and purpose of the study of school district property values under section 403.302); Request Letter, *supra* note 1, at 1.

We accordingly conclude, based on the language of subsections 403.302(d) and (e) as the language is informed by the principles of statutory construction, that section 403.302(d) requires a deduction of the amount of the captured appraised value of school district property located in a tax increment reinvestment zone that corresponds to the percentage of the tax increment actually paid into the tax increment fund by the school district.

## S U M M A R Y

Section 403.302(d)(4) of the Government Code requires the Texas Comptroller of Public Accounts to deduct the total dollar amount of only the percentage of the captured appraised value of school district property located in a tax increment reinvestment zone that corresponds to the percentage of the tax increment actually paid into the tax increment fund by the school district.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee