# Supreme Court of Texas

## No. 21-0291

Texas Medicine Resources, LLP; Texas Physician
Resources, LLP; and Pediatric Emergency Medicine Group, LLP,

*Petitioners*,

v.

Molina Healthcare of Texas, Inc.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

*~ consolidated for oral argument with ~*

No. 22-0138

UnitedHealthcare Insurance Company;
UnitedHealthcare of Texas, Inc.,

*Appellants*,

v.

ACS Primary Care Physicians Southwest, P.A.; Hill County
Emergency Medical Associates, P.A.; Longhorn Emergency
Medical Associates, P.A.; Central Texas Emergency
Associates, P.A.; Emergency Associates of Central Texas, P.A.;
Emergency Services of Texas, P.A.,

*Appellees*

On Certified Question from the
United States Court of Appeals for the Fifth Circuit

**Argued September 20, 2022**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

Three sections of the Texas Insurance Code we refer to as the Emergency Care Statutes require a health-insurance company to pay a non-network physician for emergency care rendered to the company's insureds "at the usual and customary rate".[1] Recent amendments to

---

[1] TEX. INS. CODE §§ 1271.155(a), 1301.0053(a), 1301.155(b).

Chapter 1467 of the Code provide a mandatory arbitration process for resolving payment disputes accruing on or after January 1, 2020.[2] Two cases before us present the question whether the Code authorizes a private cause of action by a physician against an insurer for payment of claims that accrued prior to 2020. The answer is no. We also hold that the physician–plaintiffs' claims for recovery in quantum meruit and for unfair settlement practices[3] fail as a matter of law.

In No. 21-0291, *Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.*, we affirm the judgment of the court of appeals. In No. 22-0138, *UnitedHealthcare Insurance Co. v. ACS Primary Care Physicians Southwest, P.A.*, we answer the certified question no.

# I

Unlike other medical specialists, emergency-medicine doctors are required by law and ethics to provide emergency care to any patient regardless of the patient's insurance status or ability to pay. In each of the cases before us, groups of emergency-medicine doctors outside an insurer's provider network sued the insurer, alleging that it did not pay them at the usual and customary rates for treating its insureds.[4]

## A

Section 1271.155(a) of the Insurance Code states that "[a] health maintenance organization shall pay for emergency care performed by

---

[2] Act of May 24, 2019, 86th Leg., R.S., ch. 1342, § 2.15, 2019 Tex. Gen. Laws 3940, 3958-3960 (SB 1264) (codified at TEX. INS. CODE §§ 1467.081-1467.089).

[3] *See* TEX. INS. CODE § 541.060(a)(2)(A).

[4] We refer to the plaintiffs as the Doctors.

non-network physicians or providers at the usual and customary rate or at an agreed rate."[5] Subsection (e) provides that an HMO "shall comply" with (a) "regardless of whether the physician or provider furnishing the emergency care has a contractual or other arrangement" with the insurer.[6] Other sections of the Code address the same directive to insurers that offer exclusive provider benefit plans, or EPOs,[7] and to those that offer preferred provider benefit plans, or PPOs.[8] In the underlying lawsuits, the Doctors allege that the defendants underpaid them for emergency care provided to thousands of the defendants' insureds and assert claims for damages under the Emergency Care Statutes. All claims asserted by the Doctors are for care provided before January 1, 2020.

**B**

Enacted in 2009, Chapter 1467 of the Insurance Code is titled

---

[5] TEX. INS. CODE § 1271.155(a).

[6] *Id.* § 1271.155(e).

[7] *See id.* § 1301.0053(a) ("If an out-of-network provider provides emergency care . . . to an enrollee in an exclusive provider benefit plan, the issuer of the plan shall reimburse the out-of-network provider at the usual and customary rate or at a rate agreed to by the issuer and the out-of-network provider for the provision of the services and any supply related to those services."); *see also id.* § 1301.001(1) (defining "[e]xclusive provider benefit plan").

[8] *See id.* § 1301.155(b) ("If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for . . . emergency care services at the usual and customary rate or at an agreed rate and at the preferred level of benefits . . . ."); *see also id.* § 1301.001(9) (defining "[p]referred provider benefit plan").

4

Out-of-Network Claim Dispute Resolution.[9] But for the first ten years of its existence, the chapter's scope was quite limited. The only dispute-resolution process set forth in it was a mediation for balance-billing disputes between an individual enrolled in one of a few enumerated types of plans and the out-of-network provider that billed the individual.[10] The original version of Chapter 1467 did not address disputes between providers and insurers at all.

Yet from the beginning, Chapter 1467 has included a standard remedies-not-exclusive provision in Section 1467.004. The original language is still in effect:

> **§ 1467.004. Remedies Not Exclusive**
> The remedies provided by this chapter are in addition to any other defense, remedy, or procedure provided by law, including the common law.[11]

In 2019, the Legislature added Subchapter B-1, which includes a mandatory binding arbitration process for disputes between an insurer and an out-of-network emergency-care physician over the amount the insurer must pay the physician for care rendered to an individual enrolled in the insurer's plan.[12] These new provisions:

- explain how the provider or insurance company requests

---

[9] Act of May 27, 2009, 81st Leg., R.S., ch. 1290, § 1, 2009 Tex. Gen. Laws 4072, 4072-4078 (HB 2256) (enacting TEX. INS. CODE ch. 1467).

[10] *Compare id.* § 1, 2009 Tex. Gen. Laws at 4072-4073, *with* Act of May 24, 2019, *supra* note 2.

[11] *Compare* Act of May 27, 2009, *supra* note 9, 2009 Tex. Gen. Laws at 4073, *with* TEX. INS. CODE § 1467.004 (current version).

[12] Act of May 24, 2019, *supra* note 2.

arbitration[13] and how the arbitrator will be selected;[14]

- limit the scope of arbitration to "the reasonable amount" owed the provider for the services rendered;[15]

- list ten categories of technical information that the arbitrator must consider in calculating the reasonable payment amount;[16]

- provide for procedures;[17] and

- authorize a suit for judicial review in which the arbitrator's decision is reviewed by the court without a jury under the substantial evidence standard.[18]

New Section 1467.085(a) reinforces the mandatory nature of the arbitration process by clarifying that notwithstanding the remedies-not-exclusive provision in Section 1467.004, an out-of-network provider cannot file suit until the arbitration is completed:

> **§ 1467.085  Effect of Arbitration and Applicability of Other Law**
> (a) Notwithstanding Section 1467.004, an out-of-network provider or health benefit plan issuer or administrator may not file suit for an out-of-network claim subject to this chapter until the conclusion of the arbitration on the issue of the amount to be paid in the out-of-network claim dispute.[19]

The arbitration process applies only to healthcare services

---

[13] TEX. INS. CODE § 1467.084.

[14] *Id.* § 1467.086.

[15] *Id.* § 1467.083(a).

[16] *Id.* § 1467.083(b).

[17] *Id.* §§ 1467.087-1467.088.

[18] *Id.* § 1467.089(b)-(c).

[19] *Id.* § 1467.085(a).

rendered on or after January 1, 2020.[20] All parties agree that it does not apply to the Doctors' claims here because the claims are for services rendered before January 1, 2020. They also agree that the new arbitration process would apply to the Doctors' claims if they were for services rendered on or after that date.

## C

The two cases before us arrived by different paths.

## 1

In *Molina*, the Doctors[21] sued Molina Healthcare of Texas, Inc., an HMO, in state district court. The Doctors allege that they provided emergency care to more than 3,800 of Molina's insureds between January 1, 2017, and the end of 2019 and that "on average, Molina has reimbursed less than 15% of [the Doctors'] usual and customary charges." The Doctors allege two sets of claims under the Insurance Code: (1) claims under Sections 1271.155 and 1301.0053, for failing to pay the Doctors' usual and customary rates; and (2) claims under Section 541.060, for engaging in unfair settlement practices.[22] They also allege a common law claim for quantum meruit. They seek damages, including statutory penalties, and "a declaration that the rate that the

---

[20] Act of May 24, 2019, *supra* note 2, § 5.01, 2019 Tex. Gen. Laws at 3963.

[21] The Doctors in *Molina* are Texas Medicine Resources, LLP; Texas Physician Resources, LLP; and Pediatric Emergency Medicine Group, LLP.

[22] In *Molina*, the Doctors also brought claims for recovery of "prompt pay" penalties. *See* TEX. INS. CODE § 843.342 (imposing penalties for an HMO's failure to pay a "clean claim" within prescribed periods of time); *see also id.* § 843.336 (defining clean claim). Molina has not appealed the dismissal of those claims to this Court.

7

jury determines to be the usual and customary rate for the past healthcare claims asserted . . . [will be] the usual and customary rate that Molina [will be] required to pay" to the Doctors for emergency care rendered in the future.

Molina removed the case to federal court, but it was remanded. Molina then filed a plea to the jurisdiction. Though Molina phrased its arguments in terms of standing and justiciability, the thrust of its plea was that the Emergency Care Statutes do not create a private right of action and that the Doctors' other claims also fail as a matter of law. After a hearing, the trial court granted the plea and dismissed all the Doctors' claims. The court of appeals affirmed.[23]

**2**

In *UnitedHealthcare*, the Doctors[24] sued UnitedHealthcare Insurance Company, which provides PPOs and other plans, and UnitedHealthcare of Texas, Inc., an HMO, in state district court initially. They assert a claim for thousands of violations of the Emergency Care Statutes arising out of care rendered from January 2016 through the end of 2019. The Doctors in this case also assert a quantum meruit claim and a claim for breach of an implied contract.

UnitedHealthcare removed the case to federal court and then moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) for

---

[23] 620 S.W.3d 458 (Tex. App.—Dallas 2021).

[24] The Doctors in *UnitedHealthcare* are ACS Primary Care Physicians Southwest, P.A.; Hill County Emergency Medical Associates, P.A.; Longhorn Emergency Medical Associates, P.A.; Central Texas Emergency Associates, P.A.; Emergency Associates of Central Texas, P.A.; and Emergency Services of Texas, P.A.

"failure to state a claim upon which relief can be granted".[25] The district court granted the motion with respect to the Doctors' implied-contract and quantum meruit claims.[26] With respect to the claims under the Emergency Care Statutes, the court also dismissed the claims under the PPO statute, Section 1301.155(b), because it had determined in earlier proceedings on the Doctors' motion to remand that the PPO claims were completely preempted by ERISA.[27] The court denied the motion with respect to the other Emergency Care Statute claims.[28] The district court then granted UnitedHealthcare's motion for a permissive interlocutory appeal under 28 U.S.C. § 1292(b) of the issues arising under the Emergency Care Statutes.[29]

On the Doctors' motion, the U.S. Court of Appeals for the Fifth Circuit certified the following question to this Court:

> Do §§ 1271.155(a), 1301.0053(a), and 1301.155(b) of the Texas Insurance Code authorize Plaintiff Doctors to bring a private cause of action against UHC for UHC's failure to reimburse Plaintiff Doctors for out-of-network emergency

---

[25] FED. R. CIV. P. 12(b)(6).

[26] *ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp. 3d 927, 934-935, 942 (S.D. Tex. 2021).

[27] *Id.* at 931, 942.

[28] *Id.* at 939, 942.

[29] Under that section, "[w]hen a district judge . . . [is] of the opinion that [an] order [not otherwise appealable] involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the judge may authorize a permissive interlocutory appeal of the question. 28 U.S.C. § 1292(b). The court of appeals may then, "in its discretion," permit the appeal. *Id.*

9

care at a "usual and customary" rate?[30]

No other issue raised in this case is before us.

**3**

We granted Molina's petition for review and accepted the certified question. Because each case presents the same question under the Emergency Care Statutes, and the Doctors are represented by the same counsel in each case, we consolidated the cases for oral argument.

**II**

The first and main issue—raised in both cases—is whether the Insurance Code authorizes a private action by an emergency-medicine physician against an insurer for payment of the usual and customary rate for services rendered before 2020 to the insurer's enrollees. Because the Emergency Care Statutes are worded similarly, and no party argues that our answer might be different for one provision than another, our analysis will focus on Section 1271.155. As we have noted, it states that an HMO "shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate".[31] The Doctors argue that when this language is viewed in the context of our caselaw and the 2019 amendments to Chapter 1467, the Code can be fairly read to authorize their claims. We disagree.

**A**

Our starting point is *Brown v. De La Cruz*, which provides the controlling legal standard: the existence of a private cause of action must

---

[30] *ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*, 26 F.4th 716, 720 (5th Cir. 2022).

[31] TEX. INS. CODE § 1271.155(a).

10

be clearly implied in the statutory text.[32]

**1**

Like this case, *Brown* involved a statute that was amended after the plaintiff's claim accrued. What was then Section 5.102 of the Property Code (now Section 5.079) requires certain sellers of residential real estate to transfer a deed to the buyer within 30 days of purchase. From 1995 to 2000, subsection (b) provided that the seller's failure to comply was "subject to a penalty" of up to $500 a day, but the statute was silent on who was entitled to collect the penalty.[33] In 2001, (b) was amended to provide that a seller who violates (a) "is liable to the purchaser for . . . liquidated damages" of $250 a day up to the 90th day and $500 a day after that, plus "reasonable attorney's fees."[34] The Court acknowledged that "[t]he 2001 amendment clearly provide[d] a private cause of action for purchasers".[35] But only the pre-2001 statute was at issue in the case, and the Court concluded that it did *not* authorize a private cause of action.[36]

"When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent."[37] To do that, we look to "the language of the specific

---

[32] 156 S.W.3d 560, 563 (Tex. 2004).

[33] *Id.*

[34] *Id.* at 564-565 (quoting TEX. PROP. CODE § 5.079(b)).

[35] *Id.* at 562.

[36] *Id.*

[37] *Id.* at 563 (citing *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 77 S.W.3d 253, 260 (Tex. 2002)).

11

provisions involved" and determine whether they "clearly impl[y]" a private cause of action.[38] In *Brown,* we said "the answer . . . must be found in the language of section 5.102."[39] Further, "[w]ithout some indication in [that section] that [the] penalty belongs to [the buyer]", we did "not believe [that] he ha[d] brought himself *so clearly within the statute's terms* as to justify implying a private cause of action."[40]

Other passages in *Brown* make clear that the bar for implying a private cause of action is high. We noted there that the court of appeals had "felt compelled to imply a private cause of action" because it could not find authority for the Attorney General to enforce Section 5.102, and the court "fear[ed] that otherwise the provision would go unenforced."[41] Indeed, the Office of the Attorney General filed an amicus brief in this Court acknowledging that it had never filed an action for penalties under Section 5.102(b).[42] Nonetheless, we said that "even if future events [were to] prove that section 5.102 is unenforceable by any public official, attorney, or agency, we [did] not believe that alone would justify an implied private cause of action".[43] That is because legislative silence cannot override a lack of clear authorization in the text. "[L]egislative silence . . . [can] reflect many things, including . . . lack of consensus,

---

[38] *Id.* (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-149 (Tex. 1995)).

[39] *Id.*

[40] *Id.* at 564 (emphasis added).

[41] *Id.* at 565-566.

[42] *Id.* at 566.

[43] *Id.*

12

oversight, or mistake" and "does not give us the power" to legislate from the bench.[44]

Furthermore, we outright rejected a "rule of necessary implication" that had been adopted by some courts of appeals.[45] Under that rule, "when a legislative enforcement scheme fails to adequately protect intended beneficiaries, the courts must imply a private cause of action to effectuate the statutory purposes."[46] Instead, we expressly approved "a contradictory rule", in which "causes of action may be implied only when a legislative intent to do so appears in the statute as written."[47] That rule, we observed, is consistent with modern federal law.[48] We proclaimed that "[t]o the extent there has been confusion about the Texas rule, we too disapprove of the former [rule of necessary implication] in favor of the latter [textual-mandate rule]."[49]

We closed the opinion by recalling that "[t]he very balance of state governmental power imposed by the framers of the Texas Constitution depends on each branch, and particularly the judiciary, operating within its jurisdictional bounds."[50] "By implying a private cause of action in a

---

[44] *Id.*

[45] *Id.* at 567 (internal quotation marks omitted).

[46] *Id.* & n.40 (collecting cases).

[47] *Id.*

[48] *See id.* & n.42 (collecting cases).

[49] *Id.*; *see also id.* at 566 (cautioning against a statutory approach centered on the statute's underlying purpose, which "will usually be less helpful when the issue is not whether a wrong should be addressed but whether private parties are entitled to do so").

[50] *Id.* at 569 (quoting *State v. Morales*, 869 S.W.2d 941, 949 (Tex. 1994)).

13

statute that did not provide for one," we wrote, "the court of appeals [had] exceeded those bounds."[51]

**2**

Our analysis in *Brown* cited to *City of Beaumont v. Bouillion*.[52] The plaintiffs in *Bouillion* were former police officers who alleged that they were constructively discharged after publicly challenging the qualifications of the new police chief. One issue before us was whether we should recognize an implied cause of action for damages for the violation of the free speech[53] and assembly[54] clauses of the Texas Constitution. We failed to find "any textual basis" for a damages action,[55] especially since the Bill of Rights expressly provides for an equitable action to declare a law void.[56] We also failed to find any "historical basis to create the remedy sought" because there was "no authority" indicating "that at the time the Constitution was written, it was intended to provide an implied private right of action for damages

---

[51] *Id.*

[52] 896 S.W.2d 143 (Tex. 1995).

[53] "Every person shall be at liberty to speak, write or publish his opinions on any subject . . . ." TEX. CONST. art. I, § 8.

[54] "The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance." *Id.* art. I, § 27.

[55] *Bouillion*, 896 S.W.2d at 149.

[56] *See id.* at 148-149 (discussing TEX. CONST. art. I, § 29 ("[W]e declare that every thing in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.")).

14

for the violation of constitutional rights."[57]

The officers pointed to the takings clause "as evidence that [we had] approved actions for damages arising under the Constitution before."[58] We explained that "[t]heir reliance on that section [was] misplaced" because:

> Section 17 provides that no person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation. The converse of the provision is that if property is taken, the owner is entitled to adequate payment. Section 17 provides a textual entitlement to compensation *in its limited context.*[59]

Later, in *Brown*, we cited *Bouillion* to exemplify our fidelity, when construing statutory or constitutional text, to "ascertain[ing] the drafters' intent" and also for the rule that the Texas Constitution or a statute will be construed to "create[] a private action for damages only if the language of the specific provisions involved clearly impl[y] one."[60] To illustrate that rule, we contrasted the language of the takings clause prohibiting takings "without adequate compensation" with the language in Article I, Section 29 declaring that any law in violation of the free speech or assembly clauses "shall be void."[61]

**3**

The Doctors cast aside most of *Brown* by characterizing Section

---

[57] *Id.* at 148.

[58] *Id.* at 149.

[59] *Id.* (emphasis added) (citation omitted).

[60] *Brown*, 156 S.W.3d at 563 (citing *Bouillion*, 896 S.W.2d at 148-149).

[61] *Id.*

15

5.102's "penal nature" as "key to [our] analysis". They urge us to hold that under *Bouillion*, Section 1271.155(a) implies a damages claim because it creates a textual entitlement to compensation. Specifically, the Doctors point out that Section 1271.155(a) "creates a compensation requirement ('shall pay'), identifies who is entitled to compensation ('non-network physicians or providers'), and identifies the measure of compensation ('usual and customary rate')." The rule they propose is that if a statute or constitutional provision does not impose a penalty, then a textual entitlement to compensation is sufficient to create a private damages action. But the analytical framework the Doctors put forward is based on a cherry-picking of language from *Bouillion*. It also ignores our clear statements in *Brown*.

To start, we cautioned in *Bouillion* that the takings clause has limited relevance to the question whether another text implies a private cause of action for damages.[62] In a previous case, we had traced the origin of a government's obligation to compensate its citizens for the taking of property back to "before Magna Carta."[63] In contrast to the rich history of takings jurisprudence, "we [found] no historical basis" for a damages action alleging a violation of the free speech and assembly clauses because there was no authority that either clause was

---

[62] *See Bouillion*, 896 S.W.2d at 149 ("The text of section 17 waives immunity only when one seeks adequate compensation for property lost to the State. We are not persuaded that a right to damages for injuries to constitutional interests can be implied solely from a limited explicit entitlement for compensation for the loss of property.").

[63] *Steele v. City of Houston*, 603 S.W.2d 786, 789 (Tex. 1980), *discussed in Bouillion*, 896 S.W.2d at 149.

interpreted to provide one "at the time the Constitution was written".[64] The takeaway from *Bouillion* should not be our acknowledgment that the takings clause of the Texas Constitution authorizes a damages action. It should be our analytical focus on the drafters' intent.[65] That is precisely why we cited to *Bouillion* in *Brown*.[66]

We never limited our statutory analysis in *Brown* to the context of a penal statute, and we fail to see why such a limitation would make sense. The separation-of-powers concerns we pointed out in *Brown* are just as present here. In *Brown*, we noted the possibility that, but a lack of clarity whether, the Attorney General could file suit under the Deceptive Trade Practices–Consumer Protection Act to collect the penalties provided for in Section 5.102.[67] We also observed that in the context of a statute imposing penalties—which could be civil in nature or criminal in nature or both—"too permissive an implication of [a]

---

[64] *Bouillion*, 896 S.W.2d at 148.

[65] *See id.* ("To interpret our Constitution, we give effect to its plain language. We presume the language of the Constitution was carefully selected, and we interpret words as they are generally understood." (citation omitted)); *id.* ("[W]e note that we have been presented no authority, and our research has revealed no authority, that would indicate that at the time the Constitution was written, it was intended to provide an implied private right of action for damages for the violation of constitutional rights."); *id.* ("[T]he text of the Texas Bill of Rights cuts against an implied private right of action for the damages sought because it explicitly announces the consequences of unconstitutional laws.").

[66] *See Brown*, 156 S.W.3d at 563 ("When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent. For example, in *City of Beaumont v. Bouillion . . . .*" (footnote omitted)).

[67] *Id.* at 566.

17

private civil action[]" could run the risk of our appropriating for the civil courts "jurisdiction the Legislature never intended."[68]

The separation of powers will be implicated any time we are asked to decide whether the Legislature has delegated to the courts the authority to enforce a statutory obligation through a damages action. But this case presents additional reasons we must be careful to stay in our lane.

One is that the Legislature has given the Department of Insurance broad authority to "regulate the business of insurance in this state" and "ensure that [the] code and other laws regarding insurance and insurance companies are executed".[69] In its oral argument exhibits, Molina has pointed to approximately thirty provisions of the Insurance Code that address the Department's powers of regulation and enforcement. Section 843.461(a) empowers the Department to take enforcement actions against an HMO that include "impos[ing] sanctions" or "administrative penalties" or "suspend[ing] or revok[ing] [its] certificate of authority".[70] Section 843.463 authorizes the Department to initiate "an action in a Travis County district court" to enjoin specific Code violations.[71] The Doctors say that Chapter 843 "omits the HMO emergency-care statute from its specific provision detailing [the Department's] dominion", but that characterization is incompatible with the text. Section 843.461(b) lists Code violations that

---

[68] *Id.* at 567.

[69] TEX. INS. CODE § 31.002(1), (3).

[70] *Id.* § 843.461(a).

[71] *Id.* § 843.463.

18

may prompt an enforcement action under (a); one is an HMO's failure to "compl[y] substantially with . . . Chapter 1271".[72] Section 843.463 expressly lists Chapter 1271 among the Code chapters whose violation could result in the Department's filing a civil action.[73]

Our warning in *Brown* about the need for caution when the criminal law could be impacted applies here too.[74] Section 843.464, titled "Criminal Penalty", provides that "[a] person, including an agent or officer of [an HMO], commits an offense if the person . . . willfully violates . . . Chapter 1271".[75] "An offense under [Section 843.464] is a Class B misdemeanor."[76]

**4**

In sum, *Brown* governs this case. The test it applies is whether the statutory text "clearly implie[s]" a private damages action.[77] Section 1271.155 does not.

**B**

That is not the end of the story, the Doctors say. They argue that language in new Section 1467.085, added to the Code in the 2019 amendments, signals the Legislature's understanding that a private cause of action already existed in the Code for claims under the Emergency Care Statutes arising under the old law. Section 1467.085

---

[72] *Id.* § 843.461(b)(10)(B).

[73] *Id.* § 843.463.

[74] *See Brown*, 156 S.W.3d at 567.

[75] TEX. INS. CODE § 843.464(a)(1).

[76] *Id.* § 843.464(b).

[77] *Brown*, 156 S.W.3d at 563.

19

states that "[*n*]*otwithstanding Section 1467.004*, an out-of-network provider or health benefit plan issuer or administrator *may not file suit* for an out-of-network claim subject to this chapter *until the conclusion of the arbitration*".[78] There are two parts to the Doctors' argument: (1) by stating that a provider or insurer "may not file suit . . . until the conclusion of the arbitration", Section 1467.085 presupposes that a right to file suit existed before the amendments; and (2) the reference to Section 1467.004 also points to a pre-existing right to sue.[79] Neither is persuasive.

Before the 2019 amendments, Chapter 1467 did not apply to claims under the Emergency Care Statutes.[80] Section 1467.004 therefore could not have authorized a private cause of action before the amendments took effect. What the Doctors really must demonstrate is that the 86th Legislature retroactively created a private cause of action for claims arising under the old, pre-arbitration law. They cannot do so because we "may not judicially amend a statute [to] add words" that are not there.[81]

The interpretation of Section 1467.085 that the Doctors advance is a stretch at best. They say that the "may not file suit . . . until" language reflects a pre-existing right to file a private cause of action, but this argument ignores what kind of suit can be filed under the new law.

---

[78] TEX. INS. CODE § 1467.085(a) (emphases added).

[79] In *UnitedHealthcare*, the federal district court agreed with this analysis. *See* 514 F. Supp. 3d at 936-939.

[80] *See supra* Part I.B.

[81] *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988).

There will be no damages action tried to a jury. The arbitrator's decision "is binding."[82] A party dissatisfied with the decision has 45 days to file a suit for judicial review, in which "the court [will] determine whether the arbitrator's decision is proper based on a substantial evidence standard of review."[83] Indeed, if Chapter 1467 tells us anything about the 86th Legislature's intent, it is that determining the amount that an out-of-network provider should be paid by an insurer is a technical exercise to be performed by a subject-matter expert—not an issue to be decided by a jury of laymen.[84]

*　　*　　*　　*　　*

We hold that the Insurance Code does not create a private cause of action for claims under the Emergency Care Statutes.

## III

In *Molina*, the Doctors challenge the lower courts' dismissal of two additional claims. We affirm on each.

## A

The first claim is for recovery in quantum meruit. Quantum

---

[82] TEX. INS. CODE § 1467.089(a).

[83] *Id.* § 1467.089(b)-(c).

[84] *See id.* § 1467.086(b) ("[T]he commissioner shall give preference to an arbitrator who is knowledgeable and experienced in applicable principles of contract and insurance law and the health care industry generally."); *id.* § 1467.083(b) (detailing ten categories of information that the arbitrator must take into account before rendering a decision, including "the 80th percentile of all billed charges for the service . . . performed by a health care provider in the same or similar specialty" in the same geographical area).

meruit is an equitable theory[85] "founded in the principle of unjust enrichment."[86] There are four elements:

1. valuable services were rendered or materials furnished;

2. for the defendant;

3. the services or materials were accepted by the defendant; and

4. the defendant was reasonably notified that the plaintiff performing the services or providing the materials was expecting to be paid.[87]

Regarding the second element, we have emphasized that "[i]t is not enough to show that [the plaintiff's] efforts benefited [the defendant]".[88] Rather, the plaintiff's "efforts must have been undertaken '*for* the person sought to be charged.'"[89]

We agree with the court of appeals that the Doctors cannot satisfy this test.[90] The Doctors claim that by treating Molina's insureds, they directly benefited Molina itself. The argument goes like this: Chapter 843 requires an HMO to "provid[e] or arrang[e] for health care

---

[85] *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018); *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988).

[86] *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985).

[87] *Hill*, 544 S.W.3d at 732-733.

[88] *Bashara*, 685 S.W.2d at 310.

[89] *Id.* (quoting *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)); *see also Truly*, 744 S.W.2d at 937 ("To recover in quantum meruit, the plaintiff must show that his efforts were undertaken *for* the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." (citing *Bashara*, 685 S.W.2d at 310)).

[90] 620 S.W.3d at 470.

services on a prepaid basis through insurance or otherwise" rather than "indemnify[] [its enrollees] for the cost of health care services."[91] Because an HMO is statutorily obligated to "provid[e] or arrang[e]" for care, the Doctors fulfilled Molina's core statutory duty by providing emergency medical care to Molina's enrollees. The Doctors cite one federal district court decision that has accepted this reasoning,[92] but we are unpersuaded.

An emergency-room physician does not undertake to provide life-saving treatment *for* an HMO or any other kind of insurance company.[93] As the Doctors emphasize in their briefing on the Emergency Care Statute claims, it is an emergency physician's ethical duty to provide care to a patient regardless of whether the patient is insured at all. At the time the services are rendered, the physicians themselves may not know anything about the patient's insurance status. We thus agree with the reasoning of another federal district court, which recently dismissed an identical claim against a group of insurers:

> Serving a defendant's *customers* is hardly the same as serving the defendant *itself*. . . . Recovery in quantum meruit cannot be had from an insurer based on services rendered to an insured, because those services aren't directed to *or* for the benefit of the insurer. As our sister district courts have repeatedly pointed out, "a ripened obligation to pay money to the insured . . . hardly can be

---

[91] TEX. INS. CODE § 843.002(12)(B); *see also id.* § 843.002(14).

[92] *See El Paso Healthcare Sys., Ltd. v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 461-462 (W.D. Tex. 2010).

[93] *See Bashara*, 685 S.W.2d at 310.

called a benefit."[94]

We hold that the Doctors cannot satisfy the second element of a quantum meruit claim as a matter of law.[95]

**B**

The remaining claim is for unfair settlement practices under Chapter 541 of the Insurance Code. Subchapter B of Chapter 541 contains several provisions that define "unfair methods of competition and unfair or deceptive acts or practices". Among them is Section 541.060(a), which prohibits the practices subsequently listed "*with respect to a claim by an insured or beneficiary*".[96] One listed practice is "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear".[97] The Doctors allege that Molina violated Section 541.060(a) by "failing to attempt in good faith to

---

[94] *Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F. Supp. 3d 425, 432 (N.D. Tex. 2020) (footnote omitted) (quoting *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001), and collecting cases).

[95] The Doctors point us to the *Restatement (Third) of Restitution and Unjust Enrichment* § 20 cmt. a (2011), which seems to support a claim for restitution under the facts presented here. In this case, we decline to jettison the longstanding requirement of Texas law that the plaintiff's efforts must have been undertaken for the defendant directly. *See Bashara*, 685 S.W.2d at 310 ("It is well settled that '[n]o one can legally claim compensation for . . . incidental benefits and advantages to one, flowing to him on account of services rendered to another . . . .'" (first and second alterations in original) (quoting *Landman v. State*, 97 S.W.2d 264, 265 (Tex. Civ. App.—El Paso 1936, writ ref'd))).

[96] TEX. INS. CODE § 541.060(a) (emphasis added).

[97] *Id.* § 541.060(a)(2)(A).

24

effectuate a prompt, fair, and equitable settlement" of the Doctors' claims under the Emergency Care Statutes. They further allege that Molina did this "knowingly" and is therefore liable for treble damages under Section 541.152(b).[98]

As an initial matter, failing to attempt a good-faith settlement is only unfair "with respect to a claim by an insured or beneficiary".[99] And as the court of appeals correctly observed, the Doctors are neither insureds nor beneficiaries.[100] Furthermore, in light of our holding that the Doctors cannot recover the difference between the payment they received and the amount they claim is the usual-and-customary rate by suing under the Emergency Care Statutes directly, it would be odd indeed if they could potentially recover three times that amount by pleading the same claim under Chapter 541.

The Doctors raise two theories to try and salvage this claim, but neither does. First, they point to the language of Section 541.151, which authorizes a "person" to sue for damages caused by an act or practice that is "defined by Subchapter B to be . . . unfair".[101] The broad statutory definition of "person" includes "an individual, corporation,

---

[98] *See id.* § 541.152(b) ("Except as provided by Subsection (c), on a finding by the trier of fact that the defendant knowingly committed the act complained of, the trier of fact may award an amount not to exceed three times the amount of actual damages.").

[99] *Id.* § 541.060(a).

[100] 620 S.W.3d at 468.

[101] TEX. INS. CODE § 541.151(1). Section 541.151 also authorizes a suit for damages caused by a person's engaging in an act or practice that is an unlawful deceptive trade practice under Section 17.46(b) of the Business and Commerce Code. *Id.* § 541.151(2).

association, [or] partnership" and is not limited to an insured or beneficiary.[102] Thus, the Doctors argue, they have "standing" under Section 541.151 to sue for a violation of Section 541.060(a).

In Part IV, we address why the issues raised in this case are not issues of standing, but of merits. That aside, we agree with the Doctors that they are persons within the meaning of Section 541.151, but it does not matter. They still can never prevail on the specific Subchapter B claim they have pleaded because it requires "a claim by an insured or beneficiary".[103]

The Doctors' second theory is that they can maintain a Section 541.060(a) claim as assignees of Molina's insureds because, as part of the patient-intake process, they obtained an assignment of the insured's benefits and claims for benefits against Molina.[104] We start with the

---

[102] "'Person' means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, or adjuster." *Id.* § 541.002(2).

[103] The Doctors rely on *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000), but *Casteel* is consistent with our analysis today. We held that Casteel, an insurance agent, was a person under Section 16(a) of Article 21.21—the statutory predecessor to Section 541.151—and that he could maintain a claim under Article 21.21 if he could "meet[] the other required elements for a cause of action" in Section 16(a). *Id.* at 385. But we went on to hold that Casteel could not state a cause of action under Article 21.21 for some of the claims because, "by their terms," they "require[d] consumer status." *Id.* at 387.

[104] This is common practice. In fact, the Legislature has prohibited insurers from issuing policies that "restrict[] a covered person from making a written assignment of benefits to a physician or other health care provider who provides health care services to the person." TEX. INS. CODE § 1204.053(a). Section 1204.053(a) thus protects the ability of a provider who has obtained an

26

observation that this theory does not make sense. "[A]n assignee under Texas common law stands in the shoes of his assignor."[105] The Doctors are not asserting a claim that the insureds could have brought. They are not suing Molina for engaging in unfair settlement practices with respect to claims by Molina's insureds. The Doctors allege that Molina engaged in unfair practices with respect to claims asserted *by them*, and those claims are not actionable under Section 541.060(a).

In any event, we also agree with the court of appeals below and with the other courts that have concluded that "claims under chapter 541 . . . may not be assigned."[106] In *PPG Industries, Inc. v. JMB/Houston Centers Partners, Ltd.*, we held that "DTPA claims . . . cannot be assigned by an aggrieved consumer to someone else."[107] One reason we gave is that DTPA claims and damages are personal and punitive rather than property-based and remedial.[108] We contrasted a DTPA claim, which entails "a 'personal' aspect in being 'duped' that does not pass to subsequent buyers", with a warranty claim,

---

assignment of benefits from the patient to bring a breach-of-contract claim against the insurer that the insured could have brought. In an amicus brief to this Court, the Texas Association of Health Plans argues that the existence of Section 1204.053(a) is further proof that, prior to the addition of the arbitration process in the 2019 amendments, the Code did not authorize a damages claim under the Emergency Care Statutes directly or by any other theory. We agree.

[105] *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010) (citing *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994)).

[106] 620 S.W.3d at 469 (collecting cases).

[107] 146 S.W.3d 79, 92 (Tex. 2004).

[108] *Id.* at 89; *see also id.* at 92.

which is purely property based and can be passed.[109] We also pointed out that "DTPA claims generally are . . . punitive" in that they "overlap[] [with] many common-law causes of action" but offer more favorable remedies, including treble damages.[110]

The same reasoning applies to the claim for unfair settlement practices under Section 541.060(a). In many cases, the same set of facts could support a breach of contract claim. But this claim is personal to the insured because it is for harm caused by the insurer's behavior and attitude towards the insured: for the insurer's "fail[ure] to attempt in good faith" to settle a claim with respect to which its "liability has become reasonably clear".[111] And it is punitive because if the insured proves that the insurer engaged in that behavior knowingly, then treble damages are authorized.[112] Thus, if the Doctors are somehow asserting a claim that Molina's insureds could have brought themselves, that claim is not assignable under *PPG Industries*.

## IV

Throughout this litigation, the parties and the lower courts have characterized Molina's challenges to the Doctors' claims as challenges to the Doctors' *standing*.[113] Some of our older opinions use standing as a

---

[109] *Id.* at 89.

[110] *Id.*

[111] TEX. INS. CODE § 541.060(a)(2)(A).

[112] *Id.* § 541.152(b).

[113] *See* 620 S.W.3d at 461 ("Physicians assert the trial court erred in dismissing their claims because they have standing to assert same and their complaints present a justiciable controversy.").

short-hand reference for a plaintiff's ability to fulfill some statutory prerequisite to bringing suit or recovering on a claim.[114] The phrasing is regrettable and has tangled the line demarcating issues that truly implicate a trial court's subject-matter jurisdiction from those pertaining to the merits.[115] The integrity of that line is fundamental to the working of the civil justice system because a court without subject-matter jurisdiction cannot decide the case at all.[116]

"A challenge to a party's standing is an attack on the party's ability under the United States and Texas Constitutions to assert a claim."[117] The constitutional requirements of standing are (1) a concrete, particularized, actual or imminent injury; (2) that is traceable to the defendant's conduct; and (3) that would be redressed by a favorable

---

[114] *See, e.g., Casteel*, 22 S.W.3d 378 (throughout the opinion, incorrectly characterizing as an issue of standing the defendant's argument that Casteel could not bring a claim under the predecessor to Chapter 541 of the Insurance Code because he did not meet the statutory definition of person).

[115] *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773 (Tex. 2020) ("[S]tanding 'is a word of many, too many, meanings.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998))).

[116] *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) ("Subject matter jurisdiction is essential to the authority of a court to decide a case."); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) ("[A] judgment will never be considered final if the court lacked subject-matter jurisdiction. 'The classification of a matter as one of subject-matter jurisdiction opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment.'" (cleaned up) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b, at 118 (1982))).

[117] *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021).

decision.[118] A plea to the jurisdiction is one appropriate vehicle for challenging a plaintiff's ability to meet these constitutional requirements in state court.

But "[a]s we have repeatedly recognized, a plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits".[119] That is because the "question whether a plaintiff has established his right to go forward with his suit or satisfied the requisites of a particular statute pertains in reality to the right of the plaintiff to relief rather than to the subject-matter jurisdiction of the court to afford it."[120] As the U.S. Supreme Court has put it, "the failure of a cause of action does not automatically produce a failure of jurisdiction,"[121] which is why a party loses *on the merits* when an arguable cause of action ultimately turns out not to exist.

More than two decades ago, we held in *Dubai Petroleum Co v. Kazi* that whether the plaintiff satisfied statutory prerequisites to maintaining a wrongful-death action arising from conduct that occurred in a foreign territory was an issue of merits, not subject-matter jurisdiction.[122] More recently, in *Pike v. Texas EMC Management, LLC*, "we discouraged the use of the term *standing* to describe extra-

[118] *Id.* at 696 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

[119] *Id.*

[120] *Pike*, 610 S.W.3d at 774 (cleaned up) (quoting *Dubai*, 12 S.W.3d at 76-77).

[121] *Steel Co.*, 523 U.S. at 91.

[122] 12 S.W.3d at 77 ("[S]ection 71.031 [of the Civil Practice and Remedies Code] is not jurisdictional . . . .").

constitutional restrictions on the right of a particular plaintiff to bring a particular lawsuit."[123] There, a defendant challenged a damages award against him by arguing that the limited-partnership plaintiff "lack[ed] 'standing' as a limited partner to recover damages individually for an injury suffered by the Partnership."[124] Recalling *Dubai*, we explained that "a plaintiff does not lack standing in its proper, jurisdictional sense 'simply because he cannot prevail on the merits of his claim'".[125] We then "conclude[d] . . . that the authority of a partner to recover for an alleged injury to the value of its interest in the partnership is not a matter of constitutional standing that implicates subject-matter jurisdiction."[126] Since *Pike*, we have also corrected arguments characterizing Sections 2001.038(a) and 2001.174(2) of the Administrative Procedure Act as "statutory standing" provisions.[127]

The issues before this Court are (1) whether the Insurance Code creates a private damages action for claims under the Emergency Care Statutes; (2) whether the Doctors can satisfy the elements of a common-

---

[123] *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021) (discussing *Pike*, 610 S.W.3d at 774).

[124] *Pike*, 610 S.W.3d at 773.

[125] *Id.* at 774 (quoting *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484-485 (Tex. 2018)).

[126] *Id.* at 775; *see also Cooke v. Karlseng*, 615 S.W.3d 911 (Tex. 2021) (reversing the court of appeals' judgment and remanding for the court of appeals to reconsider its holding that the trial court lacked jurisdiction over claims of a limited partner for harm done to the partnership in light of our decision in *Pike*).

[127] *See Dyer v. Tex. Comm'n on Env't Quality*, 646 S.W.3d 498, 506 n.36 (Tex. 2022); *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 566-567.

law quantum meruit claim; and (3) whether the Doctors can state a claim for unfair settlement practices under Chapter 541 of the Code. None of these issues implicates constitutional standing. Each is a pure issue of law pertaining to the merits that should have been raised in the trial court by traditional motion for summary judgment[128] or under Rule 91a[129]—not in a plea to the jurisdiction.

Nonetheless, both parties agree that we can render a decision on the merits, which we have done. The title of a pleading or motion does not affect a court's subject-matter jurisdiction to decide the issues raised in it.[130] "We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of the title given to it."[131] We have included this discussion to clarify again for the judiciary and the bar that the satisfaction of a statutory or common-law prerequisite to a plaintiff's filing suit or recovering on a claim is not an issue of standing but of merits.

\* \* \* \* \*

We affirm the court of appeals' judgment in *Molina*. We answer

---

[128] TEX. R. CIV. P. 166a(b).

[129] *See id.* R. 91a (dismissal of baseless causes of action).

[130] *See id.* R. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated.").

[131] *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980); *see also In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) ("We have stressed that 'courts should acknowledge the substance of the relief sought despite the formal styling of the pleading.'" (quoting *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011))).

the certified question no in *UnitedHealthcare*.

_____

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** January 13, 2023